JUDGE SCHOFIELD

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
WILLIAM GURIN,

                              Plaintiff,

   -against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION D/B/A
NYC HEALTH + HOSPITALS

                              Defendant.
-----------------------------------------------------X

**18 CV 10984**

**EMPLOYMENT DISCRIMINATION and RETALIATION COMPLAINT**

            CV

29 U.S.C. § 2601 et seq; 42 U.S.C.
42 U.S.C. §§ 12112 et seq.; N.Y.
City Admin. Code §§ 8-101 et seq.
and N.Y. Exec. Law §§ 290
et seq; N.Y Lab. Law § 741 et seq. and
N.Y. Civ. Serv. Law §75-b et seq.

**DEMAND FOR JURY TRIAL**

## PRELIMINARY STATEMENT

Plaintiff William Gurin brings this pro se action pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"); the American with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), as amended by the ADA Amendments Act of 2008; the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL"); the New York City Human Rights Law, Administrative Code of the City of New York § 8-101 et seq, ("NYCHRL"); the N.Y. Labor Law § 741 et seq; and the N.Y. Civ. Serv. Law §75-b et seq, against the defendant NYC Health and Hospitals Corporation (H+H) for defendant's wrongful (i) interference by termination of employment with plaintiff's exercise of FMLA rights; (ii) discrimination and termination of plaintiff's employment due to plaintiff's disability in violation of FMLA and ADA rights; (iii) retaliation and termination of plaintiff's employment for plaintiff's exercise of FMLA and ADA rights; (iv) discrimination and retaliatory termination of employment in violation of NYSHRL and NYCHRL and (v) retaliation and termination of plaintiff's employment for disclosing improper health care and dangers to public health in violation of N.Y. Labor Law 741 and N.Y. Civ. Serv. Law §75-b(3)(i) and seeks (i) compensatory damages for lost wages; (ii) prospective damages for future lost wages; (iii) court costs; and (iv) all other appropriate relief pursuant to federal and local law.

## PARTIES

1. The plaintiff, William Gurin, at all times relevant to this Complaint, resided at 190 Westminster Road, Brooklyn, New York 11218 and was an employee of the defendant New York City Health and Hospitals Corporation d/b/a NYC Health + Hospitals (H+H)

2. The defendant, H+H, was and is, pursuant to N.Y. Unconsolidated Laws §§ 7384(1), 7385(1), 7401, a Public Benefit Corporation with a central administrative office located at 125 Worth Street, New York City, New York, 10013.

## JURISDICTION and VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1332 and 1343; and 29 U.S.C. § 2617(2). This Court has supplemental jurisdiction over plaintiff's local law claims pursuant to 28 U.S.C. § 1367(a).

4. The claims asserted in this action arose within this district and the alleged discrimination and damage occurred in this district. Venue of this action is proper pursuant to 29 U.S.C. § 2617 and 28 U.S.C. § 1391.

## PROCEDURAL HISTORY

5. On August 13, 2018, plaintiff filed a timely charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC"), complaining of the unlawful discriminatory and retaliatory acts alleged herein. On October 11, 2018, less than 90 days from the filing of this complaint, the EEOC, at the request of the plaintiff, issued a "Right to Sue" letter after determining that the matters raised by the complaint could not be completed by EEOC investigation within 180 days. Attachment 1 (Right to Sue letter and underlying submissions).

## STATEMENT OF FACTS

6. On or about February 13, 2012 the plaintiff was hired by the defendant as a Corporate Compliance Officer in the defendant's Office of Corporate Compliance with offices located at 160 Water Street, New York, N.Y. 10013.

7.  At all times relevant to this complaint, defendant H+H was a public benefit corporation and an employer within the meaning of, and subject to, the requirements of FMLA and ADA.[1]

*Records Management Officer*

8.  On June 12, 2014, defendant's Audit Committee, a sub-committee of defendant's Board of Directors, approved plaintiff's promotion and appointment as Records Management Officer ("RMO") holding, in relevant part, the following:

> Approving the designation of William Gurin, Deputy Corporate Compliance Officer, as the New York City Health and Hospitals Corporation's ("HHC") Records Management Officer ("RMO"), as that term is defined under New York State Education Department regulations found at 8 NYCRR § 185.1[a], to coordinate the development of and oversee HHC's records management program in accordance with the requirements set forth under Article 57-A of the Arts and Cultural Affairs Law and the implementing regulations thereof.[2]

9.  On June 26, 2014, defendant's Board of Directors approved the Audit's Committee's action "…in accordance with the requirements set forth under Article 57-A of the Arts and Cultural Affairs Law and the implementing regulations thereof."[3]

10. Pursuant to N.Y. Arts and Cultural Affairs Law § 57.19, the position of RMO to which plaintiff was appointed was at all times a statutorily required position by New York State that the defendant was required to staff and maintain.[4]

11. In July 2014, in compliance with N.Y. Arts and Cultural Affairs Law § 57.19 notice requirements, the defendant notified the Offices of the N.Y. State Commissioner of Education of plaintiff's appointment as the defendant's designated RMO.[5]

---

[1] 29 U.S.C. § 203(x); 29 U.S.C. § 2611(4)(A)(i) and (4)(iii); 42 U.S. Code § 12111(5)

[2] http://www.nychealthandhospitals.org/wp-content/uploads/2016/07/201406-audit.pdf

[3] http://www.nychealthandhospitals.org/wpcontent/uploads/2016/07/201406-board.pdf

[4] NY Arts and Cultural Affairs Law § 57.19; 8 NYCRR (Regulations of the Commissioner of Education) § 185.2[a][1](3) (all local government corporations are required to designate a records management officer ("RMO") who will be responsible for developing and coordinating the public benefit corporation's records management program.); (http://www.archives.nysed.gov/common/archives/files/mr_laws_reg185.pdf0; Arts and Cultural Affairs Law, Section 57.17(1)( "Local government" means any … public benefit corporation, public corporation, or other government created under state law")

[5] 8 NYCRR §§ 185.2[b][1] and [2].

12. At the time of plaintiff's appointment, plaintiff's statutory duties as RMO required, pursuant to 8 NYCRR §§ 185.2(c), that the plaintiff: (1) recommend and guide the development and application of records management practices for defendant's employees; (2) coordinate the continuous disposition of obsolete records in accordance with legal requirements through the adoption and use of records retention and disposition schedules; (3) recommend to the commissioner suitable retention periods for any records not covered by records retention and disposition schedules; (4) coordinate the storage and management of inactive records, i.e., those no longer needed for the conduct of the day-to-day business of H+H; (5) review and make recommendations on requests for records storage equipment; (6) participate in the development of proposals for coordinating any micrographics or electronic information systems; and (7) organize or coordinate a program for the identification, administration and use of records of enduring value.

13. At the time of plaintiff's appointment, the defendant operated, and continues to operate, the largest public health care system in the United States with documents and records dispersed, *inter alia*, throughout a network of 11 acute care facilities, four skilled nursing facilities, six large diagnostic and treatment centers and multiple community-based clinics.[6]

14. As the RMO, plaintiff assumed oversight management of defendant's aforesaid documents and records which, *inter alia*, included (1) more than 550,000 boxes of documents and records, many unidentified as to internal contents, that the defendant stored with an off-site commercial vendor at a monthly fee of $310,750; and (2) an untold number of additional documents and records that were not centrally inventoried and which were randomly stored by individual departments and services at each of the defendant's facilities.

15. As the RMO, plaintiff instituted a corporate-wide records retention and disposition schedule and, *inter alia*, assumed responsibility for reducing the number of boxes and the costs of unnecessary documents and records that were stored off-site while also managing the intake of new documents and records offered for storage by defendant's facilities.

---

[6] https://data.cityofnewyork.us/Health/Health-and-Hospitals-Corporation-HHC-Facilities/f7b6-v6v3

16. In December 2017, plaintiff advised the defendant that the plaintiff was receiving medical treatment for idiopathic pulmonary fibrosis, a breathing disability within the meaning of the ADA, and was seeking FMLA approval for intermittent medical leave for treatment. [7]

17. On January 11, 2018, the defendant, having received plaintiff's medical documentation, approved plaintiff's FMLA request.

18. On or about and between February 26, 2018 and March 8, 2018, both dates being approximate and inclusive, plaintiff was out of the office pursuant to FMLA leave.

19. On March 9, 2018, less than two months from receiving FMLA approval and upon returning from the aforesaid FMLA leave, the plaintiff was terminated from his position as RMO and was escorted from the defendant's premises.

20. On March 9, 2018, plaintiff was provided with a letter from Director of Human Resources Officer Joseph Alexander ("Alexander") in which plaintiff was advised that his position had been "...eliminated and would not be backfilled." Attachment 2 (Alexander letter).

21. On March 9, 2018, plaintiff wrote Alexander to advise him that the RMO position was a position required by New York State that the defendant could not eliminate. Attachment 3 (Plaintiff's letter). [8]

22. On or about March 15, 2018, Alexander answered the plaintiff saying that "...[i]n response to your inquiry, please note that all essential responsibilities will be reassigned to existing staff in compliance with all applicable rules, regulations, and laws..." Attachment 4 (Alexander response).

23. On March 27, 2018, Denis Meadows, Director of the NYS Government Records Service, confirmed that the RMO was a position required by statute to be maintained by,

---

[7] 42 U.S.C. §§ 12102 (1)(A) and 2(A)

[8] Defendant's right to eliminate positions for budgetary reasons is fully acknowledged, but the defendant does not have the authority to eliminate, whether for budget reasons or otherwise, a position that New York State requires, by statute, that the defendant maintain. That is to say, plaintiff's employment can certainly be terminated but not by the pretext of eliminating a position that the defendant is without authority to eliminate. NY Arts and Cultural Affairs Law § 57.19; 8 NYCRR (Regulations of the Commissioner of Education) § 185.2[a][1](3) (all local government corporations are required to designate a records management officer ("RMO") who will be responsible for developing and coordinating the public benefit corporation's records management program.); (http://www.archives.nysed.gov/common/archives/files/mr_laws_reg185.pdf0; Arts and Cultural Affairs Law, Section 57.17(1)( "Local government" means any ... public benefit corporation, public corporation, or other government created under state law").

the defendant, a local government, i.e., a public benefit corporation, and when the local government appoints a RMO that person's name and contact information should be reported to the State Archives. Attachment 5 (regulatory authority letter).

*Deputy Corporate Compliance Officer for Investigations*

24. At the time of plaintiff's appointment as RMO, the plaintiff was also appointed as the Deputy Compliance Officer in charge of overseeing defendant's facilities compliance with relevant federal and state laws, rules and regulations to ensure the quality of healthcare services provided at defendant's multiple facilities.

25. In order to be eligible to receive Medicare and Medicaid reimbursement for health care services provided, the defendant must meet the terms of Centers for Medicare & Medicaid Services ("CMS") Conditions of Participation (CoP) the purpose of which is to ensure that minimum health and safety standards are being met.[9] A condition of defendant's participation, pursuant to 42 CFR § 482.21, is that a hospital must ensure the quality of its performance and of all departments and services including those services furnished under contract or arrangement.

26. In July 2017 the plaintiff initiated an investigation of the podiatry program at NYC Health + Hospitals/Lincoln ("Lincoln") to ensure its compliance with, *inter alia*, the CoP. For the period from January 1, 2000 through December 31, 2017, both dates being approximate and inclusive, the defendant operated a high-patient volume podiatry program at Lincoln and other facilities through a contractual arrangement with the New York College of Podiatric Medicine (the College").[10] With governing oversight provided by the defendant, the program was administered by a College administrator who managed the day-to-day activities of the program.

27. The College administered the program through the week day use of three Lincoln exam rooms that were staffed by two attending physicians and nine medical/podiatry students who, in groups of three, were each assigned an examining room.[11] Overall responsibility for the program was delegated to Lincoln's Chief of Surgery.

---

[9] https://www.cms.gov/Regulations-and-Guidance/Legislation/CFCsAndCoPs/index.html;
http://www.nyc.gov/html/hhc/downloads/pdf/hhc-bylaws-2012.pdf

[10] The defendant is in possession of the November 22, 2017 report on which these facts are alleged. The specifics of the allegations are set forth therein and are incorporated herein as if set forth in full.

[11] It is to be noted that the term "student" used herein refers to those college students who were attending the College and does not include residents or physicians

28. Pursuant to plaintiff's investigation, the plaintiff learned that the College, In managing the program, had authorized its students to use the password of the attending physicians in order to gain access to Quadramed, the electronic medical record of the patients seen by the department.[12]

29. Plaintiff further learned that the College had authorized its students to make medical entries in patient medical records in the name of the attending physician whose password the student had used to gain Quadramed access. Because there was no note indicating which student had made the entry, an attending physician would, days or weeks later, would "sign off" on the medical record without knowing the identity of the student who had prepared the notes and made the entries.[13]

30. Plaintiff's investigation further disclosed that given the heavy patient volume at Lincoln, the more advanced students were, on occasion, called upon to supplement the licensed medical staff by performing patient examinations and treatments on "routine matters", in the absence of a resident or attending physician.[14]

31. Plaintiff's investigation revealed that it was only by drawing upon these students as a supplemental labor force that the defendant was able to submit bills to Medicare and Medicaid wherein an attending physician examined and treated as many as 60 patients in a day.

32. CMS defines a student as "an individual who participates in an accredited educational program (for example, medical school) that is not an approved GME Program and who is not considered an intern or resident. Medicare does not pay for any services furnished by these individuals."[15] A student is not regarded as a "physician in training," and the service provided is not eligible for reimbursement consideration under the teaching physician rules. Podiatry students and medical students are not in an approved

---

[12] It is to be noted that the use of another's password to gain access to any of defendant's applications was prohibited.

[13] Quadramed did not provide a means for a student to enter notes of any sort in their own name, This was because defendant's policy at Lincoln and other facilities prohibited student entries into the medical record.

[14] In such cases, the students would consult with an attending physician outside the examining room where the attending would be treating another patient.

[15] Guidelines for Teaching Physicians, Interns, and Residents at pg. 10. Available at https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/Guidelines-Teaching-Physicians-Text-Only.pdf

graduate medical education program (GME) and are considered by CMS as "students" within the meaning of this definition.

33. Because CMS does not pay for services provided by students, any contribution and participation of a student to the performance of a billable service "...must be performed in the physical presence of a teaching physician or resident in a service that meets teaching physician billing requirements. . ." [16] While a student may, for example, document services in a patient's medical record, the teaching physician may only refer to the student's documentation of a review of systems (ROS) and/or past family social history (PFSH). For all other documentation, a teaching physician is precluded from using or referring to a student's entry to include, for example, the results of a physical examination conducted by the student and may not include those student entries as part of the teaching physician's entries in the medical record.[17]

34. If a student documents and enters information other than ROS and PFSH information into the medical record, the teaching physician must independently verify and redocument the history of present illness, and must perform and redocument the physical examination and medical decision-making activities of the service. [18]

35. Plaintiff's investigation further revealed that in "signing off" on a medical record, the College did not require that the attending physician who conducted the examination necessarily be the same physician as the one who signed off on the medical notes. Reasoning for this was related by the College's Administrator for the program who advised that since all of his physicians were "good" any one of them could sign off on another's examination.

36. By permitting the student's use of an attending physician's password in the manner described, plaintiff's investigation determined that the patient's medical record (i) failed to identify the true author of notes entered; (ii) inaccurately conveyed the name of the party who completed the patient examination; and (iii) misidentified the examining physician in

---

[16] Id at pg. 5; Also see: CMS Manual System 100.1.1(B) - Evaluation and Management (E/M) Services
https://www.cms.gov/Regulations-and-Guidance/Guidance/Transmittals/downloads/R2303CP.pdf
[17] " 60Fed.Reg. 63144-63145 (the content of the teaching physician's note is essential to establishing the teaching physician's right to bill for E&M services to Medicare patients.)
[18] https://www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNProducts/Downloads/Teaching-Physicians-Fact-Sheet-ICN006437.pdf

those cases where one attending physician signed off on the medical notes of another attending physician.

37. Based on the foregoing, the plaintiff determined that the College had compromised the integrity of the patient's medical record in that there are cases in which no one other than the patient could identify the party who provided each service. In so doing, defendant violated the CoP in the Medicaid/Medicare program, pursuant to 42 CFR § 482.24 (b), in that the defendant failed to "...maintain a medical record for each inpatient and outpatient...The hospital must use a system of author identification and record maintenance that ensures the integrity of the authentication and protects the security of all record entries."

38. On November 22, 2017, the plaintiff provided the defendant with a written report pertaining to the aforesaid investigation and informed the defendant, in December 2017, January 2018 and February 2018 of the risk presented to public health and safety by the violations described herein. In both January and February 2018, the plaintiff noted that the College administered the podiatry program at other of defendant's facilities using "borrowed" passwords and underscored the risks presented at those facilities as well. On March 9, 2018, the defendant terminated the plaintiff's employment.

### First Cause of Action
(Interference with FMLA)

39. Plaintiff realleges and incorporates herein paragraphs 1-23 above.

40. That at all times relevant to this complaint, the plaintiff was receiving medical care for idiopathic pulmonary fibrosis, a breathing disorder that constitutes a serious health condition under FMLA.[19]

41. That the defendant, an employer within the meaning of the FMLA, was aware of plaintiff's disability no later than January 11, 2018 when plaintiff received defendant's approval for FMLA coverage.

42. That for the period from February 26, 2018 to March 8, 2018, both dates being approximate and inclusive, plaintiff was on leave pursuant to FMLA.

---

[19] 29 USC § 2611(11)

43. That FMLA grants employees the right to take leave for the treatment of a serious health condition (29 U.S.C. § 2612(a)(1)) and the right to be reinstated to the former position or an equivalent position at the end of leave. 29 U.S.C. § 2614(a).

44. That on March 9, 2018, the defendant interfered with plaintiff's right to be reinstated to his position pursuant to FMLA by defendant's elimination of plaintiff's RMO position, a position that the defendant, well-knew, or should have known, pursuant to 8 NYCRR §185.2[a][1], could not be eliminated.[20]

45. That based on the foregoing, plaintiff alleges that defendant violated 29 U.S.C. § 2614(a) in that the defendant interfered with the plaintiff's exercise of his FMLA rights to be reinstated to his position as RMO upon his return from FMLA leave.by wrongfully eliminating a position that the defendant was without authority to eliminate.

### Second Cause of Action
(Retaliation for Exercising FMLA Rights)

46. Plaintiff realleges and incorporates herein paragraphs 1-23 above.

47. That at all times relevant to this complaint, the plaintiff was receiving ongoing medical care for idiopathic pulmonary fibrosis, a breathing disorder that constitutes a serious health condition under FMLA.[21]

48. That the defendant, an employer within the meaning of the FMLA, was aware of plaintiff's disability no later than January 11, 2018 when plaintiff received defendant's approval for FMLA coverage.

49. That for the period from February 26, 2018 to March 6, 2018, both dates being approximate and inclusive, plaintiff was on leave pursuant to FMLA.

50. That on March 9, 2018, the defendant terminated the plaintiff and represented as the reason for the termination that plaintiff's position had been eliminated and would not be backfilled.

---

[20] Defendant's knowledge of the state requirement for the RMO position is evidenced by the defendant's Board of Director's appointment of plaintiff to the RMO position and subsequent notification of this appointment to the NYS Department of Education as required by statute. 8 NYCRR (Regulations of the Commissioner of Education) § 185.2[a][1](3); (defendant required to,,, notify the commissioner of the name, title or position in the local government, and contact information of the designated records management officer within one month of such designation or notification."); http://www.nychealthandhospitals.org/wp-content/uploads/2016/07/201406-audit.pdf and http://www.nychealthandhospitals.org/wpcontent/uploads/2016/07/201406-board.pdf

[21] 29 USC § 2611(11)

51. That as the defendant well-knew, or should have known, pursuant to 8 NYCRR §185.2[a][1], the defendant did not have the authority to eliminate the RMO position as that position was required to be maintained by New York State.

52. That on March 15, 2018, defendant acknowledged that plaintiff's RMO statutory duties and responsibilities could not be eliminated and informed the plaintiff that those responsibilities were transferred to other members of the defendant's staff.

53. That based on the foregoing, plaintiff alleges that the defendant violated 29 U.S.C. § 2615(a)(1) in that the defendant's stated basis for termination was a pretext to mask the defendant's impermissible retaliatory motive to terminate the plaintiff, within days of his return from FMLA leave, for the plaintiff's exercise of his FMLA rights.[22]

## Third Cause of Action
(Disability Discrimination Under the ADA)

54. Plaintiff realleges and incorporates herein paragraphs 1-23 above.

55. That at all times relevant to this complaint, the plaintiff was receiving ongoing medical care for idiopathic pulmonary fibrosis, a breathing disorder that constitutes a major life impairment and a disability within the meaning of the ADA.[23]

56. That the defendant, an employer within the meaning of the ADA, was aware of plaintiff's disability no later than January 11, 2018 when plaintiff received defendant's approval for FMLA coverage.

57. That for the period from February 26, 2018 to March 6, 2018, both dates being approximate and inclusive, plaintiff was on leave pursuant to FMLA.

58. That on March 9, 2018, the defendant terminated the plaintiff and represented as the reason for the termination that plaintiff's position had been eliminated and would not be backfilled.

---

[22] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000) ("Proof that the defendant's explanation is unworthy of credence is one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive. [O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision.")

[23] 42 U.S.C. § 12102; 29 C.F.R. § 1630.2(h)

59. That as the defendant well-knew, or should have known, pursuant to 8 NYCRR §185.2[a][1], the defendant did not have the authority to eliminate the RMO position as that position was required to be maintained by New York State

60. That the defendant employed a pretext to terminate the plaintiff within days of plaintiff's return from an FMLA leave by informing the plaintiff that his RMO position was eliminated when as the defendant well-knew, or should have known, pursuant to 8 NYCRR §185.2[a][1] that this position could not be eliminated by defendant's action.[24]

61. That based on the foregoing, the defendant violated 42 U.S.C. § 12112(a) in that the defendant utilized a pretext to mask defendant's motivating force which was to terminate the plaintiff because of his disability.[25]

### Fourth Cause of Action
(Disability Discrimination Under the NYSHRL)

62. Plaintiff realleges and incorporates herein paragraphs 1-23 above.

63. That at all times relevant to this complaint, the plaintiff was receiving ongoing medical care for idiopathic pulmonary fibrosis, a breathing disorder that constitutes a disability within the meaning of the NY Exec Law.[26]

64. That the defendant, an employer within the meaning of N.Y. Exec. Law §§ 290 et seq, was aware of plaintiff's disability having approved, on January 11, 2018, plaintiff's FMLA application which required medical documentation of plaintiff's disability.

65. That for the period from February 26, 2018 to March 6, 2018, both dates being approximate and inclusive, plaintiff was on leave pursuant to FMLA.

66. That on March 9, 2018, the defendant employed a pretext to terminate the plaintiff within days of plaintiff's return from an FMLA leave by informing the plaintiff that his RMO position was eliminated when, in fact, as the defendant well knew, the RMO position was

---

[24] "[C]ourts within the Second Circuit have held [that] temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015)

[25] *Kelly v. North Shore-Long Island Jewish Health* 166 F.Supp.3d 274, 287 (E.D.N.Y.2016)("Temporal proximity suffices to raise an inference of discrimination and state a plausible employment discrimination claim.").

[26] N.Y. Exec Law § 292(21)

a position required by New York State law and could not be eliminated by defendant's action.[27]

67. That based on the foregoing, plaintiff alleges that the defendant violated N.Y. Exec. Law § 296(7). in that the defendant utilized a pretext as a means to mask defendant's motivating force which was to terminate the plaintiff because of his disability.[28]

### Fifth Cause of Action
(Disability Discrimination Under the NYCHRL)

68. Plaintiff realleges and incorporates herein paragraphs 1-23 above.

69. That at all times relevant to this complaint, the plaintiff was receiving ongoing medical care for idiopathic pulmonary fibrosis, a breathing disorder that constitutes a disability within the meaning of the NYHRL.[29]

70. That the defendant, an employer within the meaning of NYC HRL § 8-102(5), was aware of plaintiff's disability having approved, on January 11, 2018, plaintiff's FMLA application which required medical documentation of plaintiff's disability.

71. That for the period from February 26, 2018 to March 6, 2018, both dates being approximate and inclusive, plaintiff was on leave pursuant to FMLA.

72. That on March 9, 2018, upon plaintiff's return from FMLA leave, the defendant employed a pretext to terminate the plaintiff by informing the plaintiff that his RMO position was eliminated when, in fact, as the defendant well knew, the RMO position was a position required by New York State law and could not be eliminated by defendant's action.[30]

---

[27] "[C]ourts within the Second Circuit have held [that] temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015)

[28] *Colon v. Fashion Institute of Technology*, 983 F.Supp.2d 277, 287 (SDNY 2013) (plaintiff "does not need to show that "the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." )

[29] N.Y.C. HRL § 8-102(16)(b). *Malena v. Victoria's Secret* 886 F.Supp.2d 349, 362 (SDNY 2012) (The provisions of the NYCHRL that prohibit discrimination on the basis of disability are generally broader than the Americans with Disabilities Act ("ADA")

[30] "[C]ourts within the Second Circuit have held [that] temporal proximity is sufficient to raise an inference of discrimination to plausibly state a claim of employment discrimination." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 437 (E.D.N.Y. 2015)

73. That based on the foregoing, plaintiff alleges that the defendant violated NYCHRL § 8-107(7) in that the defendant utilized a pretext reason as a means to mask defendant's motivating force which was to terminate the plaintiff because of his disability.[31]

### Sixth Cause of Action
(Retaliation for the Disclosure of Improper Health Care)

74. Plaintiff realleges and incorporates herein paragraphs 1-7 and 24-37 above.

75. That at all times relevant to this complaint, the plaintiff was an employee of the defendant, as that term is defined pursuant to New York Labor Law § 741(1)(a), who performed health care services for wages or other remuneration.

76. That at all times relevant to this complaint, the defendant was a public benefit corporation that provided health care services in facilities that were licensed pursuant to Article Twenty-Eight of the New York Public Health Law.

77. That on March 9, 2018, the defendant terminated the employment of the plaintiff, in violation of N.Y. Labor Law § 741, because the plaintiff, in December 2017, January 2018, and February 2018, had disclosed, in person and by written report, to the defendant and defendant's agents, an investigation of ongoing activities, policies and practices that were in violation of 42 CFR § 482.24, and which were occurring at one or more of the defendant's licensed facilities wherein (i) patient medical records were prepared by parties other than those whose names appeared in the medical record; (ii) patients were examined and treated by parties other than those whose names appeared in the patient's medical record; and (iii) billings for completed medical services were submitted to Medicare, Medicaid and private insurers in the names of physicians other than the names of those physicians who had examined and treated the patient or who had prepared the medical record, all of which the plaintiff, in good faith, reasonably believed constituted an improper quality of patient care.

---

[31] *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir.2009) (NYCHRL claims must be "reviewed independently from and `more liberally' than their federal and state counterparts." )

### Seventh Cause of Action
(Retaliation for the Disclosure of a Public Health Risk)

78. Plaintiff realleges and incorporates herein paragraphs 1-7 and 24-37 above.

79. That at all times relevant to this complaint, the plaintiff was a public employee of the defendant, as that term is defined pursuant to N.Y. Civ. Serv. Law §75-b(1)(b).

80. That at all times relevant to this complaint, the defendant was a public employer and governmental body as those terms are defined pursuant to N.Y. Civ. Serv. Law §§75-b(1)(a) and 1(c)..

81. That on March 9,2018, the defendant, in violation of N.Y. Civ. Serv. Law §75-b(3)(i) did dismiss and take other disciplinary or other adverse personnel action against the plaintiff regarding the plaintiff's employment because the employee had disclosed to the defendant violations of 42 CFR § 482.24, occurring at one or more of the defendant's licensed facilities wherein (i) patient medical records were prepared by parties other than those whose names appeared in the medical record; (ii) patients were examined and treated by parties other than those whose names appeared in the patient's medical record; and (iii) billings for completed medical services were submitted to Medicare, Medicaid and private insurers in the names of physicians other than the names of those physicians who had examined and treated the patient or who had prepared the medical record, which violations of law, rules or regulations created and presented a substantial and specific danger to public health or safety.

### Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment finding the defendant, for the reasons stated herein, to be in violation of FMLA, the ADA, the New York State Human Rights Law and the New York City Human Rights Law and

1. Directing defendant to comply with state law and re-establish the RMO position;
2. Directing defendant to reinstate the plaintiff to the re-established position of RMO, a right plaintiff would have had enjoyed pursuant to FMLA but for defendant's wrongful interference with plaintiff's FMLA rights; or in the alternative

3. Directing defendant to pay plaintiff compensatory damages for lost and anticipated wages in the amount of $450,000.
4. Directing defendant to pay costs and fees associated with this action; and
5. For such other relief as this Court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully demands that this proceeding be tried to a jury.

## PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:

(1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

| Nov. 26, 2018 | _(signature)_ |
|---|---|
| Dated | Plaintiff's Signature |

| WILLIAM | N/A | GURIN |
|---|---|---|
| First Name | Middle Initial | Last Name |

190 WESTMINSTER ROAD

Street Address

| BROOKLYN | NY | 11218 |
|---|---|---|
| County, City | State | Zip Code |

| 917-697-3804 | WGURIN@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

x☐ Yes  ☐ No

**CONSENT TO ELECTRONIC SERVICE**

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

Note: This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234). Name (Last, First, MI)   NONE

| Nov. 26, 2018 | _[signature]_ |
|---|---|
| Dated | Plaintiff's Signature |
| WILLIAM | N/A | GURIN |
| First Name | Middle Initial | Last Name |
| 190 WESTMINSTER ROAD | | |
| Street Address | | |
| BROOKLYN | | NY | 11218 |
| County, City | | State | Zip Code |
| 917-697-3804 | | WGURIN@gmail.com |
| Telephone Number | | Email Address |